Ruffin, C. J.
 

 The divorce act requires all the material facts charged to be submitted to a jury, upon whose verdict, and not otherwise, the Court is to decree. It excludes, by necessary implication, from the consideration of the jury.
 
 *511
 
 admissions in the pleadings, and, consequently, any made orally on the trial. The purpose is to prevent collusion. That reason extends also to confessions
 
 in pais,
 
 when relied on to found a decree for divorce ; for if they could be received, it would obviously defeat the requirement, that the facts shall be found by a jury, independent of their admission in the pleadings. It is not doubted, thaf, under circumstances, what a party says may, as well as his acts, be presumptive evidence of adultery. Thus letters written in the course of an intrigue, attentions paid and received, or terms of endearment used between the pair to whom guilt is imputed, assignations for private meetings, are admissible as being in their nature overt acts of criminal conversation So, if a man and woman live together and act and speak upon the familiar terms of cohabitation, and, if the woman have a child, the.man habitually treats and speaks of it as his child, that also -would be evidence. But the acknowledging of the child is not received by itself as a confession merely, that he is ,the father,-but as one incident among many connected .with the intercourse of man and woman, and giving a criminal characterto it. judging from the ordinary
 
 indicia,
 
 in the open conduct of men of their secret acts. It is, in . the nature, of an overt act, which tends to show the private habits of the man and woman. But that is very different fr.om. the, mere declaration of this defendant to strangers on two-different,.occasions, that the child was his, without ..connecting them with any conduct of the defendant towards the child. They seem to be nothing more than naked confessions of. a fact, from which adultery is, inferred, and, as such, were not competent. But it is said, there was no suggestion, that these declarations were .made . collusively ; and thence,, that it is to be considered, .the Court had .no right to infer it. ;It is to bfe,repjetnbei-ed, nhoweyer. that supposing the.¡collusion,, it. w;.i;ll certain]y not be suggested by.either, party, and thfre -is po,,qne; pise
 
 *512
 
 to make the suggestion or establish the truth. The question, therefore, cannot turn on that, but it turns on this : that there is danger of collusion. Therefore, in order- to guard against it. it is the office of-the Judge himself to exclude such evidence, though neither party objects to it, but both should desire it to be received. The public is concerned, that divorces should not be improperly decreed; and this rule in particular is intended to protect the public morals, and promote, the public policy, rather than to guard against the effects of perjury on the party. For this reason, a
 
 venire de novo
 
 would be awarded, if there were nothing more in the case.
 

 The Court, however, is of opinion that a sufficient case does not appear in the record to authorize a divorce a
 
 vinculo matrimonii,
 
 which is that granted and the only one prayed for. The jury, indeed, found that the defendant separated himself from his wife and lived in adultery with his slave ; and, if there were any corresponding allegation in the libel, there would be a case to. render the decree right. But we think there is no such allegation. There is such a want of precision as to the dates and order of events charged, that one cannot say exactly, how far the allegations were meant to extend. The only periods given are those of 1836 for the marriage, and August 1844, for the separation of the petitioner from her husband and going to live with her brother. Everything, stated in the libel, is stated as having occurred between those periods. There is no separation of the parties alleged until that in 1844, when the petitioner left her husband’s house, and there is no allegation of any adultery by him after that event. As far as we can understand the petition, it states that between the periods mentioned, the parties lived together on the husband’s plantation, and for many years lived there happily :-that he became, at some time, in« --temperate, and then was harsh, insulting and cruel to the wife — at times beating her: that.-occasionally, for a
 
 *513
 
 while, and, afterwards, for weeks, he absented himself from bis wife’s bed at night, and, as she suspected for some time, and afterwards ascertained, he spent those nights in bed with a negro woman he had on the same plantation : that he did himself, and allowed that woman to treat his wife with contempt, depriving her of all authority as mistress of the house, and conferring it on the negro : that, afterwards, instead of going to the house of the black woman, he brought her to his own house, and frequently made her and the wife sleep in the same bed with him, and in that situation he had carnal knowledge of the negro: that at other times the husband would not allow the wife to sleep in the house, but turned her out and locked the door against her and kept her out all night; that he at some times went away, carrying the keys and leaving her without food for several daj’s together : and, finally, that she never admitted him to conjugal embraces after knowledge of his adultery, and abandoned his house in August 1844. Now, upon upon those allegations, and upon such parts of the finding of the jury, as are consistent with them, the wife would be entitled to a decree for separation and alimony. The grossness of his debaucheries, and the cruelty and indignity, with which he treated his wife, made her condition with him intolerable and authorized her to escape from his society and control. In such cases the third section of the act allows a divorce a
 
 mensa et thoro
 
 to be granted, so as to protect the wife from the efforts of the husband to force her to-return. But those are not sufficient causes for a divorce from the bonds of matrimony, under the second section. That does not authorize such a divorce for cruelty, nor for every act of adultery, nor even for habitual adultery, provided' the parties continue to live together. On the- contrary, the words are, that when “either party has separated him or herself from the other and is living in adultery,” the injured person may be divorced
 
 a vinculo'.
 
 In addition, the
 
 *514
 
 eighth section enacts, that if the party complaining admitted the other either to conjugal embraces or society, after knowledge of the criminal fact, it shall be a bar to a suit for divorce for cause of adulter}’’. Now, in the first place, it is certain, upon the face of the libel, that the wife continued to live with the husband, not only after she knew such circumstances, as created the most violent presumption of his guilt, but after the actual knowledge of it by being present and in the same bed at the fact. There is no statement of any act of adultery, which we can say or suppose was posterior to those, to which the wife was thus privy. As they took place before the separation and she was privy to them, a divorce
 
 a vinculo
 
 cannot be founded o'n them by themselves. We are far, however, from thinking those defaults of the husband purged by the conduct of his wife. On the contrary she fully accounts for her finally leaving his house, and divested that act of the appearance of fault on her part. After such a separation, forced on her by the debasing depravity, violence and other outrages of the husband, she might well insist on any supervening criminality on his part. For, so far from being precluded from making complaint of the repetition of the fault, the guilt of the repetition, after such forbearance — not connivance — on the part of the wife, would be aggravated beyond that of the first fault. We shall hold, therefore, that she might insist on adultery with this slave, supervening the separation thus forced on her. From the evidence respecting the child, about whom the petition would hardly have been silent, if it had been born when it was filed, and from the findings of the jury, it may be presumed, that in fact the criminal and disgraceful connexion between this man and his negro woman did continue after the petitioner left him. If so, it is unfortunate that it should have been omitted in framing the petition. That it is omitted, is quite clear; for, the petition gives no- account of the
 
 *515
 
 husband’s life after the day the wife left him, excepting only that he had not subsequently been admitted by her into conjugal embraces. The finding of the jury, therefore, that the husband separated himself from his wife and' is living or afterwards lived in adultery, and that she' never admitted him into conjugal embraces after her knowledge of that adultery, can have no influence on the decree, because it is incompatible with the petition, or, at least, is without any allegation in the petition of such supervening adultery, to authorize if. That the existence of such adultery in fact is indispensable, is clear from the words of the act “is living in adultery” after the separation But it is equally clear from the reason of'the thing. For, the law docs not mean to dissolve the bonds of matrimony and exclude one of the parties from marriage, until there is no just ground to hope for a reconciliation. For that reason a divorce of that kind is denied, when the parties give such evidence of the probability of reconciliation, as to continue to live together. And even when there is a separation, if the offending part}' should reform forthwith and lead a pure life afterwards, the law does not look upon it as hopeless, that reconciliation may in time follow the reformation. It may not be a case, indeed, in which the law will permit the husband to insist on a restoration of the conjugal rights of society and cohabitation, by compelling the wife’s return. But, on the other hand, it is not a case in which it is past hope, that the wife may not, upon the strength of ancient affections, and a sense of duty and interest, be willing of herself, at same time, to partake of the society and share in the fate of her reformed husband; and, until that be past hope, or, at least, a continuing impurity of life, after separation, so far impairs the hope of reformation as to leave no just expectation of it, the law will not cut oil tho parties from the liberty of uniting. In the present case, there is noth
 
 *516
 
 ing in the petition to shew, that the husband and his former paramour have ever seen each other since the day the wife left the premises. Consequently, the decree was erroneous, and the petition ought to have been dismissed, notwithstanding the verdict; which will be certified accordingly.
 

 Per Curiam.
 

 Ordered to be certified accordingly.