* BURWELL, J., having been of counsel, did not sit.
In connection with other testimony tending to prove directly criminal intercourse, as charged in the complaint, between one Palmer and the defendant, as well as their association under suspicious circumstances on other occasions, a witness, Laura Webb, was allowed to testify, defendant objecting, to a conversation between Palmer and defendant, in *Page 141 
which Palmer said: "When I was in Florida you sent for me to come back; now you have gone back on me for another man; you have something of mine that cost five dollars, and I want it." To which defendant (putting her head out of the window) answered: "I have misplaced it; go away." Whereupon Palmer replied: "You are a . . . lie; it is in that house and I want it; you have gone back on me for another man." She further stated that Palmer was in the street and defendant was in the house while they were talking. To the ruling that the testimony was competent defendant excepted. (154)
The witness Webb was allowed to testify (defendant objecting and excepting) as to what defendant swore on a trial against Lillie Graham for slander.
After the evidence was all in, and after the argument of counsel was concluded, one of plaintiff's counsel having insisted in argument that the fact that the defendant had, on the trial of the slander suit, first denied that she was in the cemetery with Palmer, and then admitted it, was a circumstance tending strongly to show that defendant's association with Palmer was not a proper one, his Honor proceeded to instruct the jury, and in doing so called their attention to the fact that he had admitted the evidence of what occurred at the trial of the slander suit, but upon further consideration he had concluded it was incompetent, and he now excluded it from the case. He further told the jury that they must not consider it, or allow it to have influence upon their minds or in any way to affect their verdict, and if they were not satisfied by a preponderance of the evidence, other than the evidence of what occurred at that trial, now ruled out, that the defendant had committed adultery with Henry Palmer, as alleged, it would be their duty to answer each of the issues "No".
Morris said he knew Palmer; had not seen him for three years; arrested him for stealing coal, and he got away. After this, defendant came to his house. (Plaintiff proposed to show by this witness what defendant said about Palmer. Defendant objected; objection sustained; objection withdrawn.) Witness stated defendant asked him if she could not pay the costs against Palmer and get the matter fixed up. She said something about this case between her and her husband; could not say she said she wanted Palmer for a witness.
The testimony that gives rise to the other exception is set forth in the opinion. (155)
From the judgment dissolving the bonds of matrimony, founded on verdict for the plaintiff, defendant appealed.
On the trial of actions for divorce a vinculo matrimonii the adultery alleged cannot be shown either by the direct testimony of the parties or confession of husband or wife made to each other, or admissions in the pleadings. The Code, sec. 1288; Steel v. Steel, 104 N.C. 631. But the declarations of an alleged paramour, made to or in the presence of the feme defendant, indicating that improper familiarities had been or were about to be indulged in between them, and her reply to such declarations, fall neither within the prohibition of the statute nor the reason of the rule, and are therefore clearly incompetent.Hansley v. Hansley, 32 N.C. 506; Brown on Divorce, 59;Pond v. Pond, 132 Mass. 219; 2 Bishop Mar. Div., 1417. The conversation between Palmer and the defendant, from its very nature, precluded the possibility that it was conceived in any collusive arrangement between the parties; and "the policy of the law, as affirmed in the express provision of the statute, is to exclude confidential communications between husband and wife, as privileged, and any declaration by either that apparently may have originated in a conspiracy between them to manufacture or furnish evidence sufficient to warrant a decree of divorce." Perkins v. Perkins, 88 N.C. 41. But where there is no danger of opening the door for collusive testimony, such suspicious conversations with an alleged paramour are clearly competent, especially in corroboration of other circumstantial testimony, or in (156) connection with other direct evidence tending to prove adulterous intercourse with the paramour. The unwarranted familiarity between the defendant and Palmer, which is shown by the conversation, tends to prove that improper relations had existed between them, and to corroborate other testimony as to criminal intercourse. 2 Bishop Mar. Div., sec. 1374.
Confidential communications between husband and wife are privileged, and neither is compelled to divulge them upon the witness stand; but the testimony of Lillie Graham that she saw Palmer in the bedroom of the defendant, and at the trestle, in company with her, was competent in itself, and when considered in connection with the previous declaration of the plaintiff, made to defendant in presence of the witness, her disregard of his express wishes becomes material, because it makes her conduct appear much more suspicious. The language used by the husband about a week before, viz., "Laura, I have told you before, and tell you again, I don't want to catch Palmer at my house any more," was not a confidential communication between husband and wife, but a command, uttered in the presence of another, the disregard of which tended to prove her infatuation for Palmer. If, then, we should concede that confidential communications between husband and wife are not simply privileged as to them, but cannot be proven even by a third *Page 143 
person, and though neither husband nor wife is competent or compellable to testify directly as to the adulterous acts charged, according to a proper interpretation of the statute (The Code, sec. 588), this was not such a communication, and, being offered in connection with her conduct, and proven by a third person, was competent. But similar testimony was declared, when this case was heard on the former appeal (Toole v.Toole, 109 N.C. 615), to be competent as tending to show adulterous intercourse, as well as for the purpose of contradicting the witness, who testified that plaintiff had employed Palmer to stay with his family. It is therefore needless to discuss this point at greater (157) length.
If the testimony of Webb was incompetent, the error in admitting it was cured by withdrawing it from the jury and giving them the proper caution not to be influenced by it in making up their verdict. Gilbert v. James,86 N.C. 244; McAllister v. McAllister, 34 N.C. 184; Osborne v. Wilkes,108 N.C. 651. From the statement of the case on appeal it appears that the objection to the testimony of Morris was withdrawn, though the exception to its admission seems to have been assigned and to be now insisted on as error. It is not material, however, whether it can be insisted on or not. The request of the defendant to be allowed to pay the costs of a prosecution against Palmer was in no sense a confession of her guilt. It was but a circumstance tending to show interest in him and association with him, and to corroborate other testimony as to adulterous intercourse between the parties. Hansley v. Hansley, supra.
The statute protects the sanctity of the relation by preventing the disclosure of confidential communications between husband and wife, and all confessions of guilt by the parties are looked upon with suspicion, because of the temptation to resort to collusion, when, as is frequently the case, both parties desire to be released from the contract. But a different question is presented when the declaration of a particeps criminis
to the accused party, and the conversation growing out of it, though amounting to an admission of criminality, is offered, or when a command of a husband to a wife is proved by a third party in connection with evidence of her disregard of such command at the instance of an alleged paramour. Whether under our statutes now in force admissions of guilt by either husband or wife, made to a third person, and under such circumstances as to preclude the suspicion of collusion, (158) would in any case be competent when disconnected with other evidence of familiarity or improper association, it is not necessary to determine.
For the reasons given, we think that there was
NO ERROR. *Page 144 
 Cited: Kinney v. Kinney, 149 N.C. 326; S. v. Randall, 170 N.C. 761;S. v. Walton, 172 N.C. 932; Stephenson v. Raleigh, 178 N.C. 170.