# SUPREME JUDICIAL COURT

#### FOR THE

## COUNTY OF PLYMOUTH, OCTOBER TERM 1870, AT PLYMOUTH.

PRESENT:

Hon. REUBEN A. CHAPMAN, Chief Justice.
Hon. HORACE GRAY, Jr.,
Hon. JOHN WELLS,                 } Justices.
Hon. MARCUS MORTON,

---

### Inhabitants of Abington vs. Inhabitants of Duxbury.

On the trial of an issue between two towns of the settlement of an infant pauper, it is incompetent for the mother to testify that the infant, though born in wedlock, is illegitimate.

In an action by one town to recover from another the expense of supporting as a pauper a married woman alleged to have her settlement with the defendants, it is competent for them to prove that her husband has a settlement in the Commonwealth elsewhere than with them, derived from his mother, without first proving that he derived no settlement from his father.

The St. of 1870, c. 392, § 2, declaring settlements acquired by laws in force before February 11, 1794, to be lost, does not affect an action brought by one town against another, before its passage, to recover the expenses of supporting a pauper alleged to have a settlement with the defendants.

CONTRACT to recover money paid by the plaintiffs for the relief of Jane E. Bradley and her minor child, Eliza A. Bradley,

as paupers, whose settlement was alleged to be with the defendants. Writ dated September 15, 1866. Trial in the superior court, before *Scudder*, J., who allowed a bill of exceptions of which the following is the substance of the material parts:

The plaintiffs proved that Jane E. Bradley and her child Eliza fell into distress in the town of Abington, and were relieved as paupers by the overseers of the poor of the town; and it appeared that the said Jane, at and long before the birth of said Eliza and the time of receiving the relief, was the wife of James F. Bradley, who had lived in Abington from his infancy; but the plaintiffs offered no evidence that James F. Bradley had a settlement in Duxbury.

" The plaintiffs then called said Jane E. Bradley, who testified she was now twenty-four years of age, and her daughter Eliza was six years old. The plaintiffs then inquired of her how long before the birth of said Eliza she had seen her husband, to which question the defendants objected, but the judge overruled the objection, and the witness testified that she had not seen her husband for about two years before the birth of said child.

" The plaintiffs then called as a witness Charles Soule, who testified that he was sixty-three years of age, and had always lived in Duxbury. The defendants admitted that said Charles Soule always had his legal settlement in the said defendant town. Said Charles Soule then was permitted to testify (the defendants objecting) that he married Rebecca Delano in 1832, and lived with her in Duxbury about thirteen months, when they separated, and had not since lived together, and said Rebecca went to Abington and pretended to marry Oliver Stetson of Abington, with whom she had ever since lived. No evidence was offered by either side, tending to show that said Rebecca was divorced from Charles Soule.

" The plaintiffs then called said Rebecca Soule or Stetson, who was permitted to testify, against the defendants' objection, that she was married to said Charles Soule thirty-six or thirty-seven years ago; that she was afterwards married to Oliver Stetson, of Abington, with whom she had ever since lived; that she was the mother of said Jane E. Bradley, wife of James F. Bradley; and

that she had not seen said Charles Soule for two years previous to the birth of said Jane E. Bradley."

After the plaintiffs had rested their case, " the defendants then produced the records of the town of Braintree, and, upon the objection of the plaintiffs and the inquiry of the judge, stated that they proposed to show that James F. Bradley, husband of said Jane E. Bradley, had a settlement through his mother, Betsey Jane Clark, in Braintree ; but, upon objection on the part of the plaintiffs, the judge excluded the evidence until the defendants had laid a foundation therefor, by first showing either that said James F. Bradley was illegitimate, or that his father, James M. Bradley, had no legal settlement within the Commonwealth." The defendants thereupon introduced evidence concerning the pedigree of James F. Bradley, and then " again offered the same evidence as at first, to show a settlement of said James F. Bradley through his mother, Betsey Jane Clark, in this Commonwealth out of Duxbury ; but, upon objection thereto by the plaintiffs, the judge ruled and held that there was no evidence in the case to warrant the jury in finding either that said James F. Bradley was illegitimate, or that said James M. Bradley, his father, had no settlement in this Commonwealth, and therefore refused to allow the evidence to go to the jury."

The jury found for the plaintiffs ; and the defendants alleged exceptions.

*P. Simmons & B. W. Harris*, for the defendants.

*E. Ames & J. B. Harris*, for the plaintiffs.

WELLS, J. Some of the points presented in this case are unimportant in themselves ; others are rendered so by the view which we take of the principal questions involved ; and we have no occasion further to advert to them.

The action is brought to recover expenses incurred by the plaintiff town for the support, as paupers, of Jane E. Bradley and her daughter Eliza. It was in proof, without controversy, that Jane E. was the wife of James F. Bradley ; and that Eliza was born after their intermarriage. The plaintiffs claimed, and offered evidence to prove, that Eliza was in fact illegitimate. Upon that ground, and under the authority of *Randolph* v. *Easton*, 23 Pick.

242, as we suppose, the plaintiffs were allowed to establish, in chief, the proposition of a settlement in the defendant town, by showing the original derivative settlement of the mother before her marriage.

If it was properly open to the plaintiffs to maintain the action by showing a settlement in this mode, it was sufficiently established by the evidence adduced, aside from that which related to the legitimacy of Jane E. Bradley. The testimony that, at the time of her birth, her mother was the legal wife of Charles Soule, was competent, and was uncontradicted. Charles Soule was a competent witness to prove the fact of her marriage with him, and to identify her. His settlement in Duxbury was admitted. By law, Rebecca Delano, upon her marriage with Soule, took his settlement as her own. She retained it, notwithstanding their separation, and her subsequent cohabitation with Oliver Stetson, under the form of marriage. Her daughter Jane E., if legitimate and the child of Soule, took his settlement in Duxbury. If illegitimate, she took the same settlement through her mother ; because, at the time of her birth, that had become her mother's settlement by her marriage with Soule. *Canton* v. *Bentley*, 11 Mass. 441.

We are of opinion, however, that the testimony of Jane E. Bradley to prove that her child Eliza, born in wedlock, was nevertheless illegitimate, was improperly admitted. *Haddock* v. *Boston & Maine Railroad*, 3 Allen, 298. 1 Taylor on Ev. § 868. As there was no other evidence on this point, the foundation for the mode of proving the settlement of Eliza, on which the plaintiffs proceeded, fails them. *Wilmington* v. *Burlington*, 4 Pick. 174.

The court are also satisfied that the ruling was wrong, by which the defence was restricted in the proposed proof that James F. Bradley had a settlement within the Commonwealth. It was not incumbent upon the defendants to prove that he had a settlement in any particular town. If he had gained a settlement for himself or derived one from any ancestor, in any town other than Duxbury, it would be sufficient to defeat the action. In that case his wife would follow his settlement. Eliza also would take the

same settlement, directly from him if legitimate, indirectly through her mother if illegitimate. The right of the plaintiffs to maintain their action upon the ground of an original settlement of Jane E. Bradley in Duxbury depends upon the want of any settlement for James F. Bradley within the Commonwealth, in any of the modes by which a settlement can be gained or derived. Defendants therefore are not confined, like plaintiffs, to a single proposition. They may set up, and support by testimony, any number of propositions, to establish alternatively a settlement in either of several towns, or in either of several modes of acquisition. If the evidence is insufficient or doubtful upon the proper sition which, under the statute, would control, the defence may still prevail upon any other proposition establishing a settlement in an alternative mode.

The present case furnishes an illustration. The defendants proposed to show that the husband, James F. Bradley, had a settlement in the Commonwealth through his mother, Betsey Jane Clark. They were not allowed to do so unless they first proved that he could derive no settlement from his father. But if he had a settlement from his father, the defendants had no occasion to offer other proof. That would of itself defeat the action. To require them to prove that James F. Bradley had no settlement from his father, was to require them to prove a fact which was essential to the maintenance of the action upon the evidence of the plaintiffs; not the less essential because, under the rule in *Randolph* v. *Easton*, the plaintiffs were relieved of the burden of proving it in chief.

The defendants were entitled to present this alternative in defence of the action: If James F. Bradley had a settlement in the Commonwealth elsewhere than in Duxbury, derived from his father, or gained for himself, the action cannot be maintained; if he had not a settlement in either of those modes, he derived a settlement from his mother, according to the provisions of the statute in such case. The plaintiffs could object to evidence tending to prove a settlement in the latter mode, only upon the suggestion of a settlement gained or derived in one of the former. The ruling of the court below relieved the plaintiffs from this

dilemma, and in effect turned it against the defendants. This was erroneous.

In this view of the case, it becomes unnecessary to consider the other rulings in detail. *Exceptions sustained.*

At a second trial in the superior court, before *Reed,* J., the jury again found for the plaintiffs, and the defendants alleged exceptions, which were argued at October term 1871, and appear in the opinion.

*P. Simmons,* for the defendants.

*J. B. Harris,* for the plaintiffs.

CHAPMAN, C. J. At this trial, the court refused to admit evidence, offered by the defendants, that James F. Bradley, the husband of Jane E. Bradley, the pauper, had a settlement in the Commonwealth, out of the town of Duxbury, derived from his mother, grandfather and other ancestors, since 1675 and before 1793 ; and ruled that any evidence of a derivative settlement previous to 1793 was inadmissible.

This ruling was on the ground that the St. of 1870, *c.* 392, § 2,* was retrospective. But this action was commenced in 1866 and the answer was filed at October term of that year. The rights of the parties were then fixed, as to this action ; and we cannot suppose the legislature intended to change them, nor do we think the fair construction of the statute makes it thus retrospective. Certainly such intention is not manifested by such clear and unequivocal expressions as would authorize us to construe it as retroactive. *Somerset* v. *Dighton,* 12 Mass. 383. *Medford* v. *Learned,* 16 Mass. 215. *Garfield* v. *Bemis,* 2 Allen, 445. Neither the section referred to, nor the St. of 1871, *c.* 379, § 3, modifying it, has any application to this case.

*Exceptions sustained.*

---

* " All settlements acquired by virtue of any provision of law in force prior to the eleventh day of February, in the year one thousand seven hundred and ninety-four, except where the existence of such settlement prevented a subsequent acquisition, are hereby declared defeated and lost."