## FLOYD PALMER

### *v.*

## EDNA S. PALMER.

[Submitted December 27th, 1911.    Decided January 11th, 1912.]

1. A putative father is incompetent to testify that a child born to the mother after marriage, though conceived before, was not his child.

2. The chancery court has no authority to provide for the support and maintenance of children upon annulling a marriage, unless authorized by a statute.

3. *P. L. 1902 p. 263* § 8 provides that when the parents of minor children live separately the court of chancery, upon petition of either parent, shall have the same power to make decrees or orders concerning their care and custody and maintenance as concerning children whose parents are divorced. A husband and wife were married while the husband was under the age of consent, and a child was born, and afterwards the husband sued for annulment.—*Held* that, upon granting an annulment of the marriage, an allowance would be made to the wife for the support of the child, even though the husband has not yet reached his majority.

---

*Mr. Chester W. Fairlie,* for the petitioner.

*Mr. William J. Kearns,* for the defendant.

HOWELL, V. C.

The parties to this controversy were married when the petitioner was under the age of eighteen and the defendant under the

age of sixteen. Previous to the marriage they had had sexual intercourse, in consequence of which the defendant became pregnant. Bastardy proceedings were instituted against the petitioner, and upon being brought before the magistrate he consented to be married to the defendant, and they were married about February 5th, 1911. The petitioner took the defendant to his father's house on that day. On the following day a child was born to them. The wife remained there for about two weeks, when she left and went to her father's house. Shortly after that, and before the petitioner reached the age of eighteen years, he brought a suit in this court to annul the marriage on the ground that he was under the age of consent when it was contracted.

To this petition a demurrer was interposed, which was upheld on the ground that the petitioner could not lawfully disannul the marriage until he had arrived at the age of eighteen years; whereupon he dismissed his suit, and on June 20th, 1911, after he had reached the age of eighteen, filed the present petition, praying that the marriage be annulled upon the ground that he was under age at the time he contracted it. A cross-petition was filed setting up the fact of the birth of the child and praying that the petitioner might be decreed to support it. To this the petitioner replied, admitting all the facts charged, but alleging that he was not the father of the child and therefore was not obligated for its support. At the hearing there was no defence to the original petition. The facts therein alleged, which are necessary to the annulment of the marriage, were fully proved. The controversy arises out of the allegations of the cross-petition. It consists of two branches—*first,* whether the petitioner is the father of the child, and, if so, whether he is bound to support it by a decree made in this proceeding. The defendant offered himself as a witness to prove that he was not the father of the child. His evidence on this point was excluded upon the ground that under the circumstances disclosed in the case it must be conclusively presumed that he was the father of the child and that he could not be allowed to disprove it. This doctrine appears in the English law as early as 1777. In that year Lord Mansfield decided the case of *Goodright* v. *Moss, 2 Cowp. 591,* in which he held that it was a rule founded in decency, morality and policy that the

parents of a child shall not be permitted to say after marriage that they have had no connection, and that therefore their offspring is spurious, more especially the mother, who is the offending party. This authority has been cited in the English courts many times, and has been followed, with, however, some dissent. The house of lords, in the *Aylesford Peerage Case, 11 A. C. 1,* held that the declarations of a mother as to the illegitimacy of her child were admissible as evidence of her conduct, although she could not be allowed to make any such statements in the witness box. And in the case of the *Poulett Peerage Claim (1903),* *A. C. 395,* the question was put upon a level with other questions of fact in an opinion delivered by Lord Halsbury, in which he expressly overruled the opinion of Lord Romilly in *Anon* v. *Anon,* *22 Beav. 481,* and *23 Beav. 273.* In England, therefore, the question of illegitimacy is now open to proof by the testimony of the father and mother as well as that of other witnesses.

In the United States, however, the old rule seems to prevail. In *Dennison* v. *Page, 29 Pa. St. 420,* it was held that the husband and wife were incompetent witnesses to prove non-access in order to establish the illegitimacy of a child born in wedlock but begotten before; this case appears to have been followed in that state until the present time. In *Abington* v. *Duxbury, 105 Mass. 287,* there was a controversy between two towns concerning the settlement of an infant pauper. In the court below the testimony of the mother was admitted to prove that her child Eliza, born in wedlock, was nevertheless illegitimate. It was held that this testimony was improperly admitted. In *Mink* v. *State, 60 Wis. 584,* the court said: "The law is well settled that the wife on the question of illegitimacy of her children is incompetent to give evidence of the non-access of her husband during the time in which they must have been begotten. This rule is founded on the very highest grounds of public policy, decency and morality. * * * Testimony of the wife even tending to show such fact, or of any fact from which non-access could be inferred, or of any collateral fact connected with this main fact, is to be most scrupulously kept out of the case." In *Egbert* v. *Greenwalt, 44 Mich. 245,* it was held that the husband and wife were incompetent to disprove sexual intercourse between themselves in order

to raise a presumption against the legitimacy of the wife's child. In *Boykin* v. *Boykin, 70 N. C. 262,* it was held that at common law neither the husband nor the wife was allowed to prove the fact of access or non-access, and that this rule is founded on decency, morality and public policy and is not changed by a statute allowing parties to testify in their own behalf. Quoting from the opinion: "It is admitted on all sides that the wife cannot bastardize her issue born in wedlock by proving non-access, but it is contended that she may establish their legitimacy by previous access. Apart from the authorities before recited directly opposed to this position a slight examination of the principles of evidence will expose its fallacy, for if the wife can give evidence of access she can, by cross-examination, be made to prove non-access, as it is a universal principle without a single exception that where a witness is introduced to prove a fact in issue she may be cross-examined as to that fact so as to disprove it and establish directly the reverse. If, therefore, the wife becomes a witness to prove access she at the same time became a witness to prove non-access, thus exposing the absurdity of the proposition that she may be examined to prove access but cannot be examined to prove non-access." In *Chamberlain* v. *People, 23 N. Y. 85,* the court says *arguendo:* "It is well settled that neither husband nor wife are competent to prove non-access during wedlock, whatever may be the form of legal proceedings or whoever may be the parties thereto. This rule was established independently of any possible motives of interest in the particular case upon the principles of public policy and decency." In our own court of errors and appeals the point was once mentioned, but was not decided. *Wallace* v. *Wallace, 73 N. J. Eq. (3 Buch.) 403.* Many other cases could be cited, but these are sufficient to show the trend of American opinion. In my judgment, the American rule, as I shall call it, seems to be a more reasonable one. It does not prevent the admission of evidence on the subject from other sources, but it does prevent the parties from stultifying themselves and committing a fraud upon each other and upon their children. I therefore hold that it was not competent for the husband to testify as a witness to prove the illegitimacy of the child in question.

We now come to the question relating to the support of the child as prayed by the cross-petition. It is urged that this court has no authority to make an order touching the support and maintenance of children unless it is authorized thereto by some statute, that it has no inherent power in the premises. This contention is undoubtedly sound, and unless some statute can be appealed to the court is without authority in the premises. In my opinion, such a statute is to be found in chapter 92 of the laws of 1902. *P. L. 1902 p. 259 § 8.* The act is entitled "An act concerning minors, their adoption, custody and maintenance." In the section referred to it is declared that when the parents of minor children live separately, the court of chancery, upon petition of either parent, shall have the same power to make decrees or orders concerning their care, custody, education and maintenance as concerning children whose parents are divorced. While it may be true that that statute was not drawn in contemplation of the case in hand, it seems to be broad enough to authorize the action of the court in the premises. The annulment of the marriage between these people did not make their child illegitimate, and does not take from them the quality of parents. They continue to be the parents of this child and they are living separately; they will hereafter continue to live separately, not by virtue of any agreement between themselves, but by virtue of the decree of this court. The case is one which comes within the exact and strict words of the statute. It may be a technical construction, but if there ever was a case in which technical construction would work equity it is this case. The whole transaction seems to me to be the most outrageous attempt to escape responsibility that has ever come under my notice. After having seduced the young woman the petitioner married her in order to escape the results of his unlawful conduct. Having escaped imprisonment, he now brings this suit for the purpose of getting rid of the woman whom he married, and having escaped the burden of supporting his wife, he now seeks to escape the burden of supporting the child whom he acknowledged to be his child by marrying its mother. Such conduct cannot appeal in the least degree to a court of conscience. There will be a decree dissolving the marriage for the cause aforesaid and making provision for the support of the child. The fact

that the petitioner has not reached his majority can exert no influence on this portion of the case. The amount will be fixed at the time of the settlement of the decree.