JOHN S. BOYKIN and wife, ALGATHA, *v.* HARRIS BOYKIN and wife, POLLY and others.

At common law, neither the husband nor the wife is allowed to prove the fact of access or non-access; and as such rule is founded "upon decency, morality and public policy," it is not changed by chap. 43, sec. 15, Bat. Rev., (C. C. P. sec. 340,) allowing parties to testify in their own behalf.

(*State* v. *Pettaway,* 3 Hawks 623, cited and approved.)

CIVIL ACTION, in the nature of a petition for Partition of lands, filed in the Probate Court, thence carried to the Superior Court of WILSON county, where it was tried on issues submitted to a jury, before *Clarke, J.,* at Spring Term, 1873.

The case comes to this Court upon the appeal of the plaintiff, who excepted to the rejection by the Court of certain evidence by them offered, tending to establish the legitimacy of the *feme* plaintiff, the issue then joined.

The facts relating to the point decided are fully set out in the opinion of the Court.

BOYKIN *et al. v.* BOYKIN *et al.*

*Faircloth & Granger*, for appellants.
*Smith & Strong*, contra.

BYNUM, J.  In 1870, one Nelson Kent died intestate, seized of the land in dispute, and without issue, but leaving brothers and sisters, his only heirs at law.

Algatha, the female plaintiff, claims that she is a sister of the intestate and one of his heirs-at-law.  It was admitted that the intestate and the defendants were the legitimate issue of Wiley Kent and Milly Kent, and also, that plaintiff, Algatha was the daughter of said Milly, and born in wedlock, and as to her the following issue was made up by consent and submitted to the jury, to wit:  " Was Algatha Boykin, the female plaintiff, the legitimate child of Wiley Kent and Milly Kent?"

The defendants introduced evidence tending to show non-access of said Wiley and Milly during the period of gestation, immediately preceeding the birth of Algatha.

The plaintiff then offered the deposition of Milly Kent, the mother, since deceased, for the purpose of establishing the paternity of her several children.  His Honor allowed certain portions of the deposition to be read, but rejected that part wherein she testified that her husband, Wiley Kent, was the father of Algatha, the plaintiff.  The plaintiff excepted.  There was a verdict for the defendant, and the plaintiff appealed.

In 2 Greenl., 132, it is laid down that the fact of access may be proved by the husband and wife, but the adjudged cases he refers to, as establishing that proposition, fall short of sustaining him, and no other elementary writer supports such a principle of evidence.

In the case of the *King* v. *Lourton*, 31 Eng. C. L. R., 312, all the cases affecting the admissibility of this kind of evidence is reviewed, and the true principle clearly enunciated by all the Judges.  Lord DENMAN:  " It is desirable to show, in a case of such importance as this, that we adhere to the old rule of law, without any doubt.  The rule cited in 2 Stark. Ev., 139, note x, from *Goodright* v. *Moss*, 2 Camp., 591, supported by

*Rex* v. *Rea,* 11 East., 132, is that parties shall not be permitted, after marriage, to say that they had no connection. Then, it being clear and indisputable, that for the purpose of proving non-access, neither husband nor wife can be a witness," &c. LITTLEDALL, J., in the same case, " But I think it (the rule) extends further and excludes all questions which have a *tendency* to prove *access* or *non-access.* Suppose in a dispute respecting legitimacy, it were an issue directed by the Court of Chancery, whether the husband and wife had or had not access to each other at such a time, I should say that neither of them could answer any question having a tendency to prove the negative or affirmative of that single issue." So PATTERSON, J.: "It is trifling to say that all inquiries may be made of a witness, close up to the point of access or non-access, so that by the variation of terms the direct question on that subject be avoided.

Whether the investigation arise upon an issue out of chancery or whether it be raised, as it was in the present case, the question as to access or non-access, is not to be asked at all, in examining the husband or wife;" and to the same effect was WILLIAMS, J.

It is then conclusively settled that at common law neither the husband or wife could prove access or non-access, and it is equally well settled that where they were not allowed to make such proof during marriage, neither will be allowed to do so after the death of the other, thus removing one great cause of distrust, by making the confidence which once subsists, ever afterwards inviolable in courts of law. 1 Phil. Ev. 70–80. There are exceptions to this rule, founded on *necessity,* where to exclude such evidence would occasion insecurity to that very relation of society, which it was the object of the rule to protect. In all such cases of necessity, as for instance, personal violence, rape, bastardy and articles of the peace, the authorities for admitting the wife's testimony in favor of the husband are equally authorities for receiving it when against him, and the rule is limited to the necessity. When a child is born in wedlock, it is presumed in law to be legitimate, and at one time

this presumption could not be rebutted, if the husband was *intra quartuor maria* during the period of gestation, but this doctrine was exploded in the case of *Pendril* v. *Pendril*, 2 Str. 925, and gave way to the modern doctrine, that this presumption of legitimacy may be rebutted by any competent evidence tending to show and satisfy the jury that such intercourse did not take place at any time, when by the laws of nature the husband could have been father of the child. 2 Greenl. Ev. 130–131.

In practice it can seldom happen that there can be anything gained by introducing the wife to prove access, for since the law presumes legitimacy on proof of birth in wedlock, the whole burden of proving non-access is thrown upon the party who affirms this negative proposition, so difficult of proof. If it should sometimes happen that evidence of access by the wife would promote the ends of justice, the law says it is better to suffer the occasional hardship than by lifting the veil from the domestic sanctuary, to expose to public view the secrets and scandals of private life.

Such being the rule at common law, it remains to be seen whether the recent changes in the law of evidence, in our State affects this case.

When the statute allowed parties to testify in their own behalf, there was no longer any reason for excluding husband and wife on account of *interest*, and that barrier was swept away by ch. 43, sec. 15, Bat. Rev. and C. C. P , sec. 340. But the reason why the wife was not allowed to prove access or non-access, is by Lord MANSFIELD and all other authorities declared to be "founded in decency, morality and public policy." *Goodbright* v. *Moses*, 2 Comp. 925 ; *State* v. *Patteway*, 3 Hawks 363 ; 2 Str. 1076 ; 8 East. 196.

It cannot for a moment be supposed that the laws of " decency and morality " are less binding upon us than upon our more unenlightened ancestors.    Therefore, as might be expected, our recent legislation upon this subject, C. C. P., sec. 340, contains a saving clause, which preserves the ancient rule

of evidence intact. "Nothing herein contained shall render any husband or wife competent or compellable to give evidence for against the other, in any criminal action or proceeding, or in any action or proceeding in consequence of adultery, or in any action or proceeding for divorce on account of adultery, (except to prove the fact of marriage,) or in any action or proceeding for or on account of criminal conversation. No husband or wife shall be compelled to disclose any confidential communication made by the one to the other during marriage."

In our opinion, this proviso, in both spirit and letter maintains the common law rule and excludes the evidence which his Honor rejected.

It is admitted on all sides that the wife cannot bastardize her issue born in wedlock by proving non-access, but it is contended that she may establish their legitimacy by proving access. Apart from the authorities before recited directly opposed to this position, a slight examination of the principles of evidence will expose its fallacy. For if the wife can give evidence of access, she can, by cross-examination, be made to prove non-access, as it is a universal principle, without a single exception, that where a witness is introduced to prove a fact in issue, she may be cross-examined as to that fact, so as to disprove it and establish directly the reverse. If, therefore, the wife becomes a witness to prove access, she at the same moment become a witness to prove non access, thus exposing the absurdity of the proposition that she may be examined to prove access, but cannot be examined to prove non-access.

Such is the view taken in the cases cited above, and such is one of the reasons given why she is wholly excluded as an incompetent witness to that fact, although competent to prove any other distinct, substantative part. Bishop on Marriage and Divorce, sec. 447.

There is no error.

PER CURIAM.                          Judgment affirmed.