DR. J. O. HOOPER v. ERNEST V. HOOPER.

(Filed 20 May, 1914.)

1. Divorce — Adultery — Husband and Wife—Evidence—Interpretation of Statutes.

It being the purpose of our statutes to remove opportunity for collusion between the husband and wife in an action for divorce on the ground of adultery, the statutory inhibition that they will not be permitted to testify for or against each other prevails whether under the circumstances of any particular case it would seemingly appear there was no collusion or otherwise (Revisal, secs. 1564, 1630, 1636) ; and the inhibition extends to any and all admissions or confessions by the other, tending to establish the acts of adultery, either in the pleadings or otherwise.

2. Same—Appeal and Error—Ex Mero Motu.

In an action for divorce of the husband on the ground of adultery of his wife, it is incompetent for the husband to testify that the wife had a certain contagious venereal disease, of which he had been free, under circumstances tending necessarily to establish her improper relations with other men (Revisal, secs. 1564, 1630, 1636) ; and the statute expressly forbidding testimony of this character being positive and enacted in the interest of society, it is the duty of the trial judge to exclude it, and upon his failure to have done so, the Supreme Court, on appeal, will consider its incompetency *ex mero motu.*

APPEAL by defendant from *Justice, J.,* at November Term, 1913, of HENDERSON.

Civil action for divorce on account of adultery.

There ·was evidence tending to show that plaintiff and defendant were married in September, 1912, and some time after that, and after a visit to Savannah, defendant developed an acute case of gonorrhea, and that she had no such disease at the time of marriage.

There was evidence also to the effect that one or more physicians had made examination of plaintiff, and could discover no symptoms of disease on plaintiff, and Dr. J. O. Hooper, examined on the trial as a witness in his own behalf, testified as follows: "That he was a resident of Saluda, Polk County, N. C., and had been for five or six years; that he boarded with Mrs. H. P. Lock, who kept a boarding-house in said town; that he married defendant on 11 September, 1912; and that a final separation took place on 8 December, 1912. That they had a misunderstanding on 19th November, and that on that date the defendant went to her home in Savannah, Georgia, and returned on the 27th of said month. After her return they lived together for a few days, up to 5th December, when things were revealed to him that he did not like; that they did not live together after the 5th, and that he notified Mrs. Lock he would not be responsible for her board after the 8th, on which date the defendant left. That he had never been unkind to the defendant, had never chloroformed her and had never mistreated her in any way. He identified letters of an amorous nature written by defendant to other men, and testified that he found same upon her person. That he had never had·gonorrhea or any other venereal disease in his life; that he never had sexual intercourse with any woman other than his wife during their married life. Did not know that his wife had gonorrhea until she charged him with having given it to her in petition for alimony served·upon him on 15 January, 1913."

Cross-examination: Told Mrs. Lock he would not be responsible for his wife's board after 8th December; did not think defendant had less than $10 when she left, of money he had given her before that; did not tell her he would bring charges against her if she did not get out and leave. · Admitted that he swore in his answer in alimony suit that defendant had

represented to him before their marriage that she lived on a prominent street in Savannah; that she was a graduate of a high school there; that she received an income from her property, and had $1,100 in the bank; that he afterwards found out that these representations were false, and that he had been deceived, but did not swear in his answer that he kicked her out on account of these things. That he had not given his wife the disease, had not treated her for it, did not know that she had it until the alimony papers were served upon him, and that she had never accused him of having given it to her. That he met the defendant about the last of May or first of June, 1912, and married her in September following.

There was verdict establishing adultery on the part of the wife.

Judgment for divorce absolute, and defendant excepted and appealed.

*Smith & Shipman for plaintiff.*
*Lee & Ford and Fortune & Roberts for defendant.*

HOKE, J., after stating the case: Our statute on divorce contains provision as follows:

Revisal 1905, c. 31, sec. 1564: "The material facts in every complaint asking for a divorce shall be deemed to be denied by the defendant, whether the same shall be actually denied by pleading or not, and no judgment shall be given in favor of the plaintiff in any such complaint until such facts shall have been found by a jury, and on such trial neither the husband nor wife shall be a competent witness to prove the adultery of the other, nor shall the admissions of either party be received as evidence to prove such fact."

And the chapter on evidence, ch. 34, sec. 1630, making parties competent and compellable to give their testimony in a cause, closes with restrictive words: "Nothing in this section shall be construed to apply to any action or other proceeding in any court instituted in consequence of adultery, or to any action for criminal conversation." And in section 1636, referring to causes in which a husband or a wife may be competent and

compellable to give their evidence, the same restriction again appears as follows: "Nothing herein shall render any husband or wife competent or compellable to give evidence for or against each other, in any criminal action or proceeding (except to prove the fact of marriage in case of bigamy), or in any action or proceeding in consequence of adultery, or in any action or proceeding for divorce on account of adultery (except to prove the fact of marriage), or in any action or proceeding for or on account of criminal conversation."

These regulations, which have long existed in this State, express the settled purpose of our Legislature that, in actions for divorce on account of adultery, neither the husband nor the wife shall be competent or compellable to give evidence which fixes or tends to fix either with adultery and the inhibition extends to any and all admissions or confessions by the other, of like tenor, either in the pleadings or otherwise. *Perkins v. Perkins,* 88 N. C., 41; *Hansley v. Hansley,* 32 N. C., 506.

True, in the case of *Broom v. Broom,* 130 N. C., 562, the statute was held not to apply where a wife was offered for the sole purpose of denying the statement of third persons, witnesses, as to specific acts of adultery on her part, but the restriction undoubtedly exists, and extends, as stated, to any and all testimony by either the husband or the wife which has a tendency to establish the adultery of the other.

The legislation is based upon the gravest reasons of public policy and, as stated in the authorities cited, is designed, not only to prevent collusion where the same exists, but to remove the opportunity for it.

In *Perkins' case, supra,* divorce was sought on the ground that the wife had contracted the disease of syphilis and communicated it to her husband, and declarations were offered on the part of the wife tending to show that she had contracted the disease from a third person while her husband was absent in South Carolina, accompanied by proof that the "man in the case" had the disease. There was no suggestion or claim of actual collusion, but the admissions were rejected, and *Ruffin, J.,* in delivering the opinion, on this subject, said: "Indeed,

though not entirely apparent, we cannot avoid an impression, arising out of the statement of the case itself, that, as it was, he succeeded in getting before the jury much testimony which properly should have been excluded. His own physical condition and exemption from secret disease at the time of his return from South Carolina were so peculiarly within his own knowledge, and so difficult of knowledge by another, that it seems impossible to doubt that he was, himself, permitted to testify directly to those matters; and if so, it was improperly done, since those facts were intended to be used, and were used, as links in a chain of circumstances to convict the defendant of the adultery alleged in the complaint—of which there seems to have been literally no direct proof.

"Be this, however, as it may, there can be no question in the minds of the Court as to the propriety of excluding the testimony with reference to the admissions of the defendant. The provision of the statute is so pointed and its language so plain—that in such trials neither the husband nor the wife shall be a competent witness to prove the adultery of the other; nor shall the admissions of either be received as evidence to prove such fact—as to leave no room for doubt or construction. This prohibition, as has been often said by the Court, proceeds out of that regard which the law always has for good morals, and that interest which society has at stake in the preservation of the marriage relations of its members, seeing that they are not only essential to social order, but that they constitute the foundation of society itself, and it is the duty of the courts to see that neither this policy of the law nor public interest is impaired through the collusion of the parties, and in fact that it shall not even encounter the risk of being so impaired: for, as said in *Hansley v. Hansley,* 10 Ired., 506, this policy of excluding the admissions of the parties depends, not so much upon the ground that there is collusion between them, as upon the danger that there may be."

A perusal of this testimony of plaintiff will show that much of it had a direct tendency to establish adultery on the part of

165—39

HOOPER *v.* HOOPER.

the wife. Indeed, there is doubt if, without it, the evidence was sufficient to carry the case to the jury, and, under our authorities, the testimony should have been excluded.

It is contended that the objection referred to is not open to defendant, for the reason that the record discloses no exception made to the testimony either at the time of trial or since. But this position, while supported by rule and precedent in ordinary cases, is not allowed to prevail where it appears from a perusal of the record that material evidence, made incompetent by statute for reasons of public policy, has been admitted and allowed to affect the result. In such case it became the duty of the trial judge to exclude the testimony, and his failure to do so must be held for reversible error, whether exception has been noted or not.

*Broom v. Broom,* 130 N. C., 562; *S. v. Gee,* 92 N. C., pp. 756-762; *S. v. Ballard,* 79 N. C., 627.

We have no desire or purpose to intimate that there is evidence of collusion in the present case, but, as heretofore stated, this legislation is designed not only to prevent collusion, but to remove the opportunity for it; and to allow a divorce to stand which has been procured on testimony expressly made incompetent by statute, merely because the evidence was not objected to at the time and no exception has been noted of record, would be to afford every facility for collusive divorces, and, in many instances, would in effect nullify the statute.

For the error indicated, there must be a new trial, and it is so ordered.

New trial.

CLARK, C. J., concurring: It will be noted that Revisal, 1564, 1630, and 1636, do not disqualify a husband or wife from being witness in their own behalf in actions for divorce or criminal conversation or in criminal actions except when such testimony would be "for or against the other." In *Broom v. Broom,* 130 N. C., 562, the testimony of the wife denying the specific acts testified to by certain witnesses was not "for" the husband so as to aid him in getting divorce, nor was it against him as proving anything that he had done.

But in the present case the testimony of the husband, as the Court holds, "had a direct tendency to establish the ground of divorce against the wife."