## HATTIE WEST v. WILLIAM REDMOND.

(Filed 22 March, 1916.)

**1. Marriage—Admissions—Evidence.**

Where title to lands in controversy depends upon the legitimacy of a child born shortly after marriage, and the date of the marriage and the birth of the child are admitted, the questions as to the competency and legal effect of the record and other evidence offered to prove them are immaterial.

**2. Husband and Wife—Wedlock—Children—Legitimacy—Presumption—Evidence—Rebuttal.**

The law presumes the legitimacy of a child born in lawful wedlock, though within a short period of time after marriage; but the presumption may be rebutted by facts and circumstances which show that the husband could not have been the father of the child, such as impotency or that he could not have had access to his wife.

**3. Adultery—Marriage—Evidence—Admissions—Statutes—Slaves.**

Where title to lands depends upon the legitimacy of the heir born in wedlock a short time after the marriage, evidence of the wife, on the issue of adultery, as to the nonaccess of the husband, is incompetent; and *a fortiori* evidence of her declarations to that effect made after her death.

CIVIL ACTION, tried by *Bond, J.,* and a jury, at November Term, 1915, of PITT.

This is a proceeding for the partition of land, tried upon an issue as to the legitimacy of the plaintiff, Hattie West.

It was admitted by the defendant: "That if plaintiff, Hattie West, is a legitimate child of William Wesley Redmond, alias Redmond Blow,

alias Little Red Blow, then she owns an undivided one-half interest as tenant in common with defendant (owner of the other half interest) in the land described in complaint."

It was agreed by both sides that said William Wesley Redmond, alias Redmond Blow, alias Little Red Blow, was lawfully married to Olivia Wilkins; that both husband and wife are dead; that plaintiff, Hattie West, daughter of said Olivia, was born a few months after said marriage, and that said William Wesley Redmond was where he could have had access to said Olivia at time said Hattie was begotten.

The defendant proposed to offer, subject to its competency and legal effect, evidence tending to show the following facts:

1. Record of marriage, showing marriage between said Olivia Wilkins and said William Wesley Redmond on 31 January, 1890.

2. That Hattie (plaintiff) was born 25 May, 1890.

3. That a few days thereafter William Wesley Redmond and Hattie's mother (his wife) had a quarrel, in which William said he was not the father of Hattie and he was going to leave said Olivia, at which time said Olivia admitted that William was not Hattie's father, but that Henry Wilkes was, and said she reckoned Henry was able to take care of Hattie; that they then separated and never lived together thereafter; that defendant claims Hattie resembles Henry Wilkes and does not resemble William Wesley Redmond, and that Olivia on numerous occasions said Hattie was not William's child.

This evidence was excluded, and the defendant excepted.

There was a verdict and judgment in favor of the plaintiff, and the defendant appealed.

*W. F. Evans for plaintiff.*
*Julius Brown for defendant.*

ALLEN, J. The evidence offered by the defendant to prove the date of the marriage of Olivia Wilkins and William Wesley Redmond, and of the birth of the plaintiff, becomes immaterial, as the marriage was admitted and that the plaintiff was born a few months thereafter, and it is therefore only necessary to consider the admissibility of the declarations of the mother tending to prove the illegitimacy of the plaintiff.

A child born in wedlock is presumed to be legitimate, and, as stated by *Ruffin, C. J.,* in *S. v. Herman,* 35 N. C., 503, quoting from Coke on Littleton, this presumption exists "if the issue be born within a month or a day after marriage." It is also stated by Coke, 244a, that "By the common law, if the husband be within the four seas, that is, within the jurisdiction of the King of England, if the wife have issue, no proof is to be admitted to prove the child a bastard unless the husband hath an apparent impossibilitie of procreation; as if the husband be but 8 years

old"; but this has been modified by admitting evidence to rebut the presumption of legitimacy which shows that the husband could not have been the father of the child. *Ewell v. Ewell,* 163 N. C., 236. The modern rule which generally prevails is that "When a child is born in wedlock, the law presumes it to be legitimate, and unless born under such circumstances as to show that the husband could not have begotten it, this presumption is conclusive; but the presumption may be rebutted by the facts and circumstances which show that the husband could not have been the father, as he was impotent or could not have had access." *S. v. McDowell,* 101 N. C., 734.

It is also generally accepted that in the absence of statutory authority a married woman is incompetent to testify to the nonaccess of her husband on the question of the legitimacy of her offspring. *Matter of Mills,* 127 Cal., 298, 91; *Craufurd v. Blackburn,* 17 Md., 49; *Scanlon v. Walshe,* 81 Md., 118; *Abindton v. Duxbury,* 105 Mass., 287; *Egbert v. Greenwalt,* 44 Mich., 245; *People v. Court of Sessions,* 45 Hun. (N. Y.), 54; *Ratcliff v. Wales,* 1 Hill (N. Y.), 63; *People v. Overseers of Poor,* 15 Barb. (N. Y.), 286; *Cross v. Cross,* 3 Paige (N. Y.), 139; *Bell v. Territory,* 8 Okla., 75, 853; *Dennison v. Page,* 29 Pa. St., 420; *Tioga County v. South Creek Township,* 75 Pa. St., 433; *Mink v. State,* 60 Wis., 583, 445; *Boykin v. Boykin,* 70 N. C., 262.

In the last case cited *Justice Bynum* says: "It is, then, conclusively settled that at common law neither the husband nor wife could prove access or nonaccess, and it is equally well settled that where they were not allowed to make such proof during marriage, neither will be allowed to do so after the death of the other, thus removing one great cause of distrust by making the confidence which once subsists ever afterwards inviolable in courts of law"; and he concludes that the statutory changes in the law of evidence have not affected the rule.

And the same principle which excludes the husband and wife as witnesses applies with greater force to their declarations because in both the same public policy is conserved, and as to declarations there is the absence of an oath, no opportunity for cross-examination and no opportunity for the jury to observe the demeanor of the declarant, which are recognized tests of truth, and which would be present if the husband or wife was examined as a witness.

It seems that the first time the admissibility of the declarations of the husband or wife on the question of illegitimacy was definitely settled was in *Goodright v. Moss,* 11 Eng. Rul. Cases, 520, decided in 1777, when *Lord Mansfield* said: "The law of England is clear that the declarations of a father or mother cannot be admitted to bastardize the issue borne after marriage"; and this has been generally followed, although there are some cases, involving issues of paternity and pedigree strictly, which appear to hold to a contrary view.

In 8 Enc. Ev., p. 174, the author says: "Declarations of neither husband nor wife can be received for the purpose of assailing the legitimacy of a child born to the wife during wedlock"; and he cites many cases in the note in support of the text, among others, *Johnson v. Chapman*, 45 N. C., 217, where *Nash, C. J.*, says: "The only evidence upon which the defendants rely to prove the plaintiff to be illegitimate consists of the declarations of Frederick Johnson to his wife. This evidence is not competent. Mr. Greenleaf, vol. 2, sec. 151, says the husband and wife are alike incompetent to prove the fact of nonaccess while they lived together, nor are the declarations of either competent to prove the illegitimacy, though the child was born three months after marriage, and therefore they had separated by mutual consent"; and *Rhyne v. Hoffman*, 59 N. C., 336, in which *Battle, J.*, speaking of a child born in wedlock, states the same rule as follows: "This plaintiff must, therefore, be taken to be legitimate, unless it be proven by irrefutable evidence that the husband was impotent or did not have any sexual intercourse with his wife; but the former is not pretended, and the latter is a fact which neither the wife nor the declarations of the wife is admissible to prove. *Rex v. Luffe*, 8 East, 193. Here, independent of the declarations of the wife, which must be rejected as incompetent, there is no testimony sufficient to rebut the presumption of access." In *Wallace v. Wallace*, 137 Ia., 37, the Court says: "Declarations, as well as the evidence of either husband or wife as to access or nonaccess, are excluded whenever the issue of legitimacy is involved, and this includes cases of antenuptial conception. The first ruling on this latter phase of the inquiry was by *Sir John Romilly*, Master of the Rolls, in 1856 (*Anonymous v. Anonymous*, 23 Beav. (Eng.), 273), and it has been approved by the consensus of judicial opinion since."

This last case is also reported in 15 A. and E. Anno. Cases, 716, and in the note to that case and to *Evans v. Freeman*, 6 Anno. Cases, 816, and *Godfrey v. Rowland*, 7 Anno. Cases, 577, numerous authorities are collected sustaining the rule.

The principle is also clearly recognized in *Ewell v. Ewell*, 163 N. C., 237, where the Court says, while discussing proof of nonaccess: "The latter (nonaccess) is a fact which neither the wife nor the declarations of the wife is admissible to prove."

The cases of *Woodard v. Blue*, 107 N. C., 407, and *Erwin v. Bailey*, 123 N. C., 634, which are relied on by the defendant, are easily distinguishable from the one before us.

Those cases are based on the act of 1866 as amended by the act of 1879, legitimating the children of former slaves, and there was no valid marriage at the time of the birth of issue, which is the essential fact upon which this opinion rests.

When *Woodard v. Blue* was first reported (103 N. C., 116), the Court, realizing that the same rule did not prevail under the statutes relating to slaves as in cases of a lawful marriage, said: "To repel the inference of paternity, drawn from the mere fact of cohabitation, the same stringent rules do not prevail as in cases of established legal marriage, when to bastardize the issue there must be full, affirmative, repelling proof, such as impotency, nonaccess, and the like, or the presumption of legitimacy will stand. 1 Green. Ev., par. 28; Abbott's Trial Ev., 88."

The case of *S. v. Liles,* 134 N. C., 742, also relied on, involved no issue except paternity, and contains nothing in conflict with the ruling in the Superior Court.

We are therefore of opinion that the evidence offered by the defendant was properly excluded and that there is

No error.