JAMES MAURICE BIGGS, BY HIS NEXT FRIEND, JIM BIGGS, PLAINTIFF v. NORMA JEAN BIGGS, BY HER GUARDIAN AD LITEM, NORA WEITERS, DEFENDANT.

(Filed 21 September, 1960.)

**1. Appeal and Error § 21a: Trial § 21½—**

The correctness of the court's ruling on motion to nonsuit is not presented by an exception to the refusal of the motion at the conclusion of all the evidence when the record fails to show a supporting exception, or, indeed, that the motion to nonsuit was renewed after the introduction of evidence by defendant, since the failure to renew the motion after the close of all the evidence waives the motion made at the close of plaintiff's evidence. G.S. 1-183.

**2. Trial § 21½—**

Involuntary nonsuit is solely statutory, and the statutory procedure must be strictly followed. G.S. 1-183.

**3. Appeal and Error § 19—**

An assignment of error must be based upon an exception duly noted.

**4. Husband and Wife § 7—**

Neither the husband nor wife is competent to testify as to nonaccess where the legitimacy or paternity of a child is directly in issue or is a necessary inquiry in determining a material issue.

**5. Same: Divorce and Alimony § 3—**

Where, in the husband's action for divorce on the ground of adultery, the wife pleads condonation and testifies to intercourse with him after he forgave the alleged adultery and that she was pregnant as a result of such intercourse, it is competent for the husband to deny the intercourse and to testify to nonaccess at the time in question, since the question of paternity is not in issue, and, by virtue of G.S. 50-11 his testimony could not have the effect of rendering illegitimate any child conceived during coverture.

**6. Same—**

Where the wife sets up condonement as a defense in the husband's action for divorce on the grounds of adultery, it is competent for the

husband to deny the intercourse relied on as a basis for the condonement and to testify as to nonaccess, there being no collusion, since his testimony in denial of the defense of condonation is not testimony for or against the wife on the issue of adultery and therefore does not come within the purview of G.S. 50-10 or G.S. 8-56. Any inference of adultery results from testimony introduced by her in regard to her pregnancy.

**7. Evidence § 12—**

While an act of intercourse between husband and wife is a confidential communication between them within the purview of G.S. 8-56, the statute does not preclude the husband from voluntarily denying the intercourse with the wife, asserted by her as condonation in his action for divorce on the ground of adultery, his testimony being otherwise competent, since the statute does not preclude the voluntary disclosure of confidential communications but provides merely that neither spouse may be compelled to divulge such communications.

APPEAL by defendant from *Pless, J.,* March 1960 Mixed Term, of SWAIN.

This is an action for divorce *a vinculo* on the ground of adultery. Summons was issued and complaint filed 16 December 1958.

Plaintiff husband alleged in substance: Requisite North Carolina residence. The parties were married 24 November 1955 and separated after six months cohabitation. A child, Serita Rosanna Biggs, was born to the union on 12 December 1956. Defendant wife committed adultery in February and March 1958. Plaintiff had knowledge of the acts of adultery more than six months prior to the initiation of the action.

Defendant's answer denied the allegations of adultery. By leave of court defendant filed amendment to answer in October 1959 and set up the defense of condonation, as follows: "THAT the Plaintiff and Defendant reunited and resumed their marital relations and cohabitation with each other as husband and wife at Homestead, Florida, Sunday night, October 18th, 1959, and said fact is hereby plead as condonation by the Plaintiff of the acts of adultery alleged by him against the Defendant in his Complaint, which acts are again denied by the Defendant, and as a bar to the recovery sought by the Plaintiff in his said Complaint."

Plaintiff in reply denied the allegations of condonation.

On trial both plaintiff and defendant offered evidence.

Issues were submitted to and answered by the jury as follows:

"1. Has the plaintiff been a resident of North Carolina, Swain County, for more than six months next preceding the bringing of this action? ANSWER: YES.

"2. Was the plaintiff and defendant married as alleged in the complaint? ANSWER: YES.

"3. Did the defendant commit adultery as alleged in the complaint? ANSWER: YES.

"4. If so, did the plaintiff condone the said adultery? ANSWER: NO.

From judgment granting plaintiff an absolute divorce defendant appealed and assigned errors.

*Sanford W. Brown for defendant, appellant.*
*Styles and Styles for plaintiff, appellee.*

MOORE, J.    (1) Defendant assigns as error the failure of the court to nonsuit the action.

At the close of plaintiff's evidence defendant moved for nonsuit. The motion was overruled and defendant excepted. Thereafter defendant introduced evidence and plaintiff offered evidence in rebuttal. At the close of all the evidence there was no renewal of the motion to nonsuit. Defendant assigns as error both the refusal of the court to nonsuit at the close of plaintiff's evidence and the failure to dismiss at the close of all the evidence.

Assignment of error No. 5 is as follows: "EXCEPTION #7 (R. p. 53). At the conclusion of all the evidence, the defendant renewed her motion for the dismissal of the action as of nonsuit and for a directed verdict in her favor on her plea in bar therein. Motion denied. Exception by defendant."

There is no exception shown at page 53 of the record. A page by page examination of the record does not disclose an exception numbered 7 nor any renewal of the nonsuit motion after defendant began the introduction of evidence.

"If the defendant introduces evidence he thereby waives any motion for dismissal or judgment of nonsuit which he may have made prior to the introduction of his evidence and cannot urge such prior motion as ground for appeal." G.S. 1-183. "The power of the court to grant an involuntary nonsuit is altogether statutory and must be exercised in accord with the statute." *Warren v. Winfrey,* 244 N.C. 521, 522, 94 S.E. 2d 481; *Ward v. Cruse,* 234 N.C. 388, 389, 67 S.E. 2d 257. The defendant, having failed to move for dismissal at the close of all the evidence and having waived her motion made at the close of plaintiff's evidence, has failed to provide proper basis for the assignments of error for failure to nonsuit, and they are not sustained.

BIGGS *v.* BIGGS.

With respect to the supposed motion for directed verdict, the record does not show that any such motion was made. The assignment of error relating thereto is not based on an exception. "The Supreme Court will not consider questions not properly presented by objections duly made and exceptions duly entered. The assignments of error must be based on exceptions duly noted . . ." 1 Strong: N. C. Index, Appeal and Error, s. 19, pp. 88-9. *Waddell v. Carson,* 245 N.C. 669, 677, 97 S.E. 2d 222.

(2) Defendant maintains that she is entitled to a new trial for error in the admission of incompetent evidence.

Defendant denied that she committed adultery but alleged that, if it should be found she had indulged in adulterous acts, defendant forgave her and condoned the acts by resuming the marital relationship.

She testified in part: In October 1959 after the institution of this divorce action, plaintiff, who was a member of the U. S. Air Force and stationed in Florida, telephoned and asked her to come to Florida and bring their daughter, Serita, he thought they could get back together. She and Serita went to Florida on 17 October 1959 and registered at a motel where plaintiff spent the night with them. He had sexual intercourse with defendant at the motel. The next day he told her he was coming to Asheville and they would live together. He said he would drop the divorce case. She is pregnant as a result of the intercourse with plaintiff in Florida. He later repudiated his agreement to drop the case and live with her.

Before the above testimony of defendant was given, plaintiff, on cross examination by defendant's counsel, stated: Defendant came to Florida. She arrived on 17 October 1959, called him at the Base and told him he could come to see Serita if he wanted to. He went to the motel with two friends. He met his wife downstairs and talked to her about twenty minutes. He carried Serita to the room and remained there about a minute and a half. His friends were present. He then returned to the Base. He did not spend the night with his wife; she is not pregnant from having intercourse with him at the motel.

On redirect examination he testified:

"Question. State whether or not you had sexual relations with Norma Jean Biggs down in Florida when she was down there?

"Defendant objects. Overruled. (Exception).

"Answer. No sir.

"Question. How long were you in her presence in the room with her when you were down there?

"Defendant objects. Overruled. (Exception).

"Answer.. I would say about a minute and a half; I took the child to the door..and I stood there about a minute and a half."

Defendant's contention is that plaintiff was not competent to testify to nonaccess.

In the light of the pleadings and evidence in this case, the question for decision is: Where, in an action by a husband for divorce on the ground of adultery, the wife pleads condonation and testifies that the husband had intercourse after agreeing to forgive her and that she is pregnant as a result of the intercourse, is it error to permit the husband to deny the intercourse?

The answer to this question involves a consideration of the Lord Mansfield rule and several statutory provisions of our law.

In *Goodright v. Moss*, 2 Cowp. 591 (1777), Lord Mansfield declared that "it is a rule founded in decency, morality and policy that they (husband and wife) shall not be permitted to say after marriage, that they have had no connection, and therefore the offspring is spurious." Under this rule a husband or wife is incompetent to testify to the husband's nonaccess where such testimony would tend to bastardize or prove a child conceived after marriage illegitimate. This rule is generally recognized in the United States. Stansbury: N. C. Evidence, s. 61, p. 107. In early North Carolina decisions the rule was recognized and applied. *Boykin v. Boykin*, 70 N.C. 262; *State v. Pettaway*, 10 N.C. 623. Later the court apparently considered that the rule had been abrogated by statute (G.S. 8-56). *State v. McDowell*, 101 N.C. 734, 7 S.E. 785. However, the latest decisions in this jurisdiction uniformly recognize and apply the rule in cases where the legitimacy or paternity of a child is directly in issue or is a necessary inquiry in determining a material issue. *State v. Campo*, 233 N.C. 79, 62 S.E. 2d 500; *State v. Bowman*, 231 N.C. 51, 55 S.E. 2d 789; *Ray v. Ray*, 219 N.C. 217, 13 S.E. 2d 224; *West v. Redmond*, 171 N.C. 742, 88 S.E. 341. We find no decision of this Court which applies the rule of Lord Mansfield where legitimacy of a child is not in issue.

In defendant's able brief we find an exhaustive list of authorities from other jurisdictions. Because of statutory limitations, often at variance with our statutes, and the difference in factual situations involved, we find these of little help in the situation here presented. Defendant chiefly relies upon the following cases: *Adams v. Adams*, (Vt. 1930) 148 A. 287; *Harward v. Harward*, (Md. 1938) 196 A.

318; *Admire v. Admire,* (N.Y. 1943) 42 N.Y.S. 2d 755. In the *Adams* case the wife brought an action for divorce on the grounds of cruelty and desertion. The husband defended on the ground that plaintiff had given birth to an illegitimate child. He thereby raised the issue of legitimacy in his pleadings. In *Harward* the plaintiff sued for divorce on the ground of adultery and alleged that his wife had been delivered of an illegitimate child as a result of her adulterous acts. Thus, he placed the paternity of the child directly in issue, and the Court declared it to be an issue in the case. In the *Admire* case the husband sued "for divorce and for an adjudication that child born during coverture was illegitimate." Paternity was an issue in all these cases. There was much dicta favorable to defendant's contention but the situations involved were different from that in the case *sub judice.*

In the instant case paternity was not in issue. The challenged evidence was merely a denial of defendant's affirmative defense of condonation by act of intercourse. *Abbott v. Abbott,* (N.Y. 1928) 228 N.Y.S. 611. The testimony of the defendant had no tendency to bastardize the child then *in ventre sa mere.* It would have had no such effect in law had the child been born prior to the testimony. Parenthetically, it is unknown to the Court whether or not a child has since been born, but this makes no difference in the decision of this case. ". . . (N)o judgment of divorce shall render illegitimate any child *in esse,* or begotten of the body of the wife during coverture. . ." G.S. 50-11. Since the evidence in question did not in any respect tend to bastardize a child and the question of legitimacy was not in issue, the nonaccess rule has no application in this case.

There is the further contention that the challenged testimony was incompetent by reason of G.S. 8-56. The pertinent provisions of this statute are: "In any trial . . . the husband and wife of any party thereto . . . shall, except as herein stated, be competent and compellable to give evidence, as any other witness on behalf of any party to such suit. . . . Nothing herein shall render any husband or wife competent or compellable to give evidence *for* or *against* the other in any action or proceeding in consequence of adultery, or in any action or proceeding for divorce on account of adultery . . . Provided, however, that in all such actions and proceedings, the husband and wife shall be competent to prove, and may be required to prove, the fact of marriage. No husband or wife shall be *compellable* to disclose any confidential communication made by one to the other during their marriage." (Emphasis ours.)

"At common law husband and wife were absolutely incompetent

to testify in an action to which either was a party." Stansbury: N. C. Evidence, s. 58, p. 99. G.S. 8-56 was designed to remove the common law disabilities, except in the instances therein set out. It disqualifies both spouses from testifying *for* or *against* the other in any action or proceeding in consequence of adultery or for divorce on account of adultery. The purpose of the exception is to prevent collusion in divorce actions. *Hooper v. Hooper*, 165 N.C. 605, 81 S.E. 933. But it does not prevent the party charged with adultery from denying the charge. *Broom v. Broom*, 130 N.C. 562, 41 S.E. 673.

In the *Broom* case two of plaintiff's witnesses said they had had intercourse with defendant wife since her marriage to the plaintiff. Defendant denied the testimony of these witnesses. Referring to the exceptions in G.S. 8-56, the Court said: "If the intention had been to exclude the husband and wife absolutely as witnesses in such cases, . . . the proviso . . . would have been that . . . the husband and wife were 'not competent or compellable as witnesses.' The proviso merely disqualifies both spouses from testifying *for* or *against* the other. The Court held that her testimony was not prohibited by the statute because "she did not testify *for* the husband so as to enable him to obtain a collusive divorce, nor did she testify *against* him to prove anything against him. Her evidence was in defense of herself, and not 'for or against' the other party, and the statute disqualifies neither as a witness in his or her own behalf, except only when it is for or against the other . . . . These words (for or against each other) mean something, and when given their natural significance simply prevent either party proving a *ground* of divorce *against* the other or *for* the other by his or her own testimony."

The situation in the instant case is somewhat analogous. Any contention that Mrs. Biggs was not competent "in an action or proceeding for divorce on account of adultery," to testify in her own behalf in support of her affirmative defense of condonation would be untenable. It is true that it is testimony against the husband in the sense that it tends to oppose the ultimate purpose of the suit. But the same was true in the *Broom* case. The wife's denial of the acts of adultery was calculated to affect the ultimate outcome against the husband, but was not collusive. By the same reasoning the testimony of plaintiff Biggs in denial of the alleged condonative act of intercourse with his wife was purely defensive, related only to the issue of condonation, and was not collusive. He was not disqualified by the statute to defend himself against the charge of condonation.

It is true that an act of intercourse between husband and wife is a confidential communication. But the statute merely provides that

"no husband or wife shall be *compellable* to disclose any confidential communication." His testimony (and that of his wife) was voluntarily given; there was no effort to compel such testimony.

Defendant further contends that the plaintiff was not competent to give the challenged testimony by reason of G.S. 50-10, which provides in part: In a divorce action "neither the husband nor wife shall be a competent witness to prove the adultery of the other." *Hooper v. Hooper, supra.*

But this statute does not apply to the factual situation here presented. The husband gave no testimony with respect to the allegations of adultery in his complaint. Nothing said by him would have any tendency to prove the issue of adultery in the case. In the challenged testimony he merely states that he did not have sexual intercourse with his wife in Florida and was in her room only one and one-half minutes. But defendant insists that the testimony permits an inference of adultery. If so, it is because of evidence elicited by her from her husband on cross examination and her own later testimony that pregnancy resulted from intercourse with plaintiff during the Florida visit. Plaintiff's voluntary testimony contains no charge of adultery against defendant. It was competent in denial of condonation. If an inference of adultery resulted from defendant's own later testimony and evidence elicited by her on cross examination, it has no tendency to "prove" the issue of adultery according to the allegations of the complaint, and cannot avail her on this appeal. She will not be heard to complain of error induced by her, if error there be.

The New York Court, in a factual situation almost identical with that of the instant case, had no hesitancy in ruling that on a plea of condonation husband's denial of sexual intercourse with his wife was admissable. *Abbott v. Abbott, supra.* It is noted that the New York Court's application of Lord Mansfield's rule and New York's statutory provisions are in many respects more restrictive than those in this jurisdiction. *Admire v. Admire, supra.*

To decide this case otherwise would have the effect, in many instances, of making a plea of condonation an unanswerable and absolute defense, in divorce cases on the ground of adultery, should the wife choose to testify that she became pregnant as a result of condonative sexual intercourse with her husband.

In the trial of this case we find

No error.