IN THE COURT OF APPEALS OF NORTH CAROLINA

2021-NCCOA-44

No. COA19-617

Filed 2 March 2021

Pitt County, No. 16CRS055654

STATE OF NORTH CAROLINA

    v.

CHARLIE JAMES HARRIS, III, Defendant.

Appeal by defendant from judgment entered 1 March 2018 by Judge Marvin K. Blount III in Superior Court, Pitt County. Heard in the Court of Appeals 14 April 2020.

> *Attorney General Joshua H. Stein, by Special Counsel to the Chief Deputy Attorney General, Shannon J. Cassell, for the State.*
>
> *Jarvis John Edgerton, IV, for defendant-appellant.*

STROUD, Chief Judge.

¶ 1        Defendant appeals judgments convicting him of first degree attempted murder and assault with a deadly weapon with intent to kill inflicting serious injury. Under North Carolina General Statute § 8-57, defendant's wife was "both competent and compellable to" testify against defendant as this is "a prosecution for assaulting or communicating a threat to the other spouse[.]" Defendant's wife's testimony regarding his statements to her while he was attacking her with a knife and while

she was attempting to escape were not "prompted by the affection, confidence, and loyalty engendered by such relationship," so these statements were not "confidential communication[s.]" The trial court did not err in compelling wife to testify as to the statements' defendant made and in not striking her testimony. N.C. Gen. Stat. § 8-57 (2015); *State v. Rollins*, 363 N.C. 232, 237, 675 S.E.2d 334, 337 (2009) (citations and quotation marks omitted). We conclude there was no error.

## I. Background

On the first day of defendant's jury trial, defendant's wife, Leah,[1] testified that on 30 July 2016, she and defendant got into an argument, and when she began walking upstairs defendant stabbed her multiple times in her back, arms, leg, stomach, face, and neck. Leah further testified that defendant stopped stabbing her after he cut himself, and he began taking off her pants; when she asked what he was doing he responded, "I want to have sex, this could be my last time having sex." Leah testified she told defendant she would have sex with him if he put the knife down, but she did not want to have sex, rather she "just wanted to go to the hospital[,]" and she only agreed so defendant would "put the knife down."

Defendant had sex with Leah and requested her to do certain things, but she was in pain and "really couldn't move." At some point, Leah gained control of the

---

[1] A pseudonym is used.

knife, and she testified defendant told her "it's over for him now and he knows the police is coming and he just wanted me to let the knife go so he could kill hisself[.]" Leah begged for water, and defendant asked her "all of these questions," and then took her phone into another room. Leah ran out of the house, still without her pants and screaming, and drove to a Kangaroo store "around the corner" for help. Leah required trauma surgery for her wounds from the stabbing, and she remained in the hospital approximately a week. During the first day of trial, when all of this testimony was presented, defendant did not object to Leah's testimony about defendant's statements.

¶ 4    On the second day of defendant's trial, Leah informed the trial court she did not want "to testify against [her] husband." Defense counsel argued Leah was attempting to assert marital privilege, and he would "move to strike all of her testimony from yesterday." The State countered that marital privilege was not applicable if the defendant was being prosecuted for a felony he had committed against his wife. After much discussion and research, the trial court denied defendant's motion to strike and informed Leah

> you have a duty in this case to testify and that based on the Court's understanding of the statute, that you can be compelled to testify in this case and you have been subpoenaed in this case by the State to testify and that you have a duty and an obligation to answer all questions proposed of you or proposed to you in a truthful manner.

> And if you refuse to answer those questions, ma'am, you
> may be held and will be held in contempt of court[.²]

The jury found defendant guilty of attempted first degree murder and assault with a deadly weapon with intent to kill inflicting serious injury. The trial court entered judgments. Defendant appeals.

## II.     Confidential Marital Communications

Defendant's only argument on appeal is that "the trial court committed reversible error under N.C. Gen. Stat. § 8-57(c) when it allowed into evidence privileged marital communications that the State compelled defendant's spouse to reveal pursuant to a subpoena." (Original in all caps.) Whether a statement is "a privileged confidential communication" as defined by North Carolina General Statute § 8-57 "is a question of law" which this Court reviews *de novo*. *State v. Matsoake*, 243 N.C. App. 651, 656, 777 S.E.2d 810, 813 (2015). Further, "[a]lleged statutory errors are questions of law and, as such, are reviewed *de novo*. Under *de novo* review, the appellate court considers the matter anew and freely substitutes its own judgment for that of the lower court." *State v. Hughes*, 265 N.C. App. 80, 81–82, 827 S.E.2d

---

² Leah countered that she was not certain she was competent because she had "depression and posttraumatic stress disorder." Counsel was appointed to represent Leah, and her counsel did not deem her to have any issues with competency as a witness. Leah's competency as a witness is not at issue on appeal.

318, 320 (citation omitted), *stay dissolved, writ of supersedeas denied, and disc. review denied,* ___ N.C. ___, 830 S.E.2d 827 (2019).

¶ 7        Defendant's argument focuses on limited portions of Leah's testimony he contends are "privileged and confidential marital communications[.] . . . Specifically, these communications were:  (1)  requests to have sex . . .; (2) confessions of suicidal thoughts . . .; and (3) admissions by defendant of guilt to crimes against his wife[.]" Defendant does not challenge her testimony describing defendant's actions, including stabbing her repeatedly.

¶ 8        North Carolina General Statute § 8-57 provides,

> (b)        The spouse of the defendant shall be competent but not compellable to testify for the State against the defendant in any criminal action or grand jury proceedings, except that the spouse of the defendant shall be both competent and compellable to so testify:
> . . . .
> (2)        In    a    prosecution    for    assaulting    or communicating a threat to the other spouse;
> . . . .
> (c)        No husband or wife shall be compellable in any event to disclose any confidential communication made by one to the other during their marriage.

N.C. Gen. Stat. § 8-57.

> To    assess    whether    the    conversations    between defendant and his wife were in fact protected by subsection 8–57(c), our analysis turns on whether there was a confidential communication between defendant and his

wife in the DOC facilities. When defining a confidential communication in the context of the marital communications privilege, this Court has asked *whether the communication was induced by the marital relationship and prompted by the affection, confidence, and loyalty engendered by such relationship.*

*Rollins*, 363 N.C. at 237, 675 S.E.2d at 337 (emphasis added) (citation, quotation marks and ellipses omitted).

¶ 9        The State contends that defendant failed to object to the statements at issue on appeal, and thus the issue is not preserved. Defendant contends his argument under North Carolina General Statute § 8-57 is preserved for appellate review even without a contemporaneous objection to the testimony. Defendant also made a motion to strike Leah's testimony, and the trial court heard extensive argument on the issues and ruled on the motion. But even if we assume *arguendo* that defendant's motion to strike Leah's testimony properly preserved his argument for appeal, the portions of testimony he challenges here were not confidential communications.

¶ 10        The State also contends that North Carolina General Statute § 8-57 is not applicable because Leah's testimony of defendant's statements were not "confidential communication" under the statute. Defendant counters in his reply brief he "has *only* challenged *confidential communications* pursuant to N. C. Gen. Stat.§ 8-57(c)," and thus "the State's attempt to rely on an exception to the N.C. Gen. Stat. § 8-57(b) rule is misplaced." (emphasis added). In defendant's reply brief he relies on *Biggs v. Biggs*,

253 N.C. 10, 16, 116 S.E.2d 178, 183 (1960), wherein the Supreme Court stated, "It is true that an act of intercourse between husband and wife is a confidential communication[;]" but defendant takes this sentence entirely out of context to create his argument.

¶ 11 The issue in *Biggs* was: "Where, in an action by a husband for divorce on the ground of adultery, the wife pleads condonation and testifies that the husband had intercourse after agreeing to forgive her and that she is pregnant as a result of the intercourse, is it error to permit the husband to deny the intercourse?" *Id.* at 14, 116 S.E.2d at 181. Based upon *Biggs*, a civil case under North Carolina General Statute § 8-56 as it was written in 1960, *see id.*, 253 N.C. 10, 116 S.E.2d 178, defendant contends that "our North Carolina Supreme Court has recognized that communications about marital sex between spouses are confidential communications and N.C. Gen. Stat. § 8-57([c]) states, without exception, that no spouse 'shall be compellable in any event to disclose any confidential communication made by one to the other during their marriage.'" Defendant argues any statement related to sexual intercourse between spouses is a "confidential communication" which the trial court cannot compel "in any event[.]"

¶ 12 We first note that only one of the statements challenged by defendant was about sex; the other statements were regarding suicidal thoughts and admission of guilt to his crimes. Further, defendant's *Biggs* argument, applicable only to the

statement regarding sex, entirely ignores North Carolina General Statute § 8-57 (b)(2) which specifically provides that a spouse of a defendant "shall be both competent and compellable to testify" "[i]n a prosecution for assaulting or communicating a threat to the other spouse[.]" N.C. Gen. Stat. § 8-57(b)(2). A prosecution for attempted murder of a spouse and assault with a deadly weapon with intent to kill inflicting serious injury upon a spouse *is* "a prosecution for assaulting" the other spouse. *Id.*

¶ 13 Beyond the statements regarding sex, defendant also cites to criminal cases decided under North Carolina General Statute § 8-57 in support of his argument, but these cases are inapposite as the other spouse is not the victim in those cases, the very issue at the heart of North Carolina General Statute § 8-57(b)(2). *See, e.g., Rollins*, 363 N.C. 232, 675 S.E.2d 334 (determining that spousal privilege under North Carolina General Statute § 8-57 "does not extend to communications occurring in the public visiting areas of the North Carolina Department of Correction (DOC) facilities because a reasonable expectation of privacy does not exist in such areas"); *State v. Holmes*, 101 N.C. App. 229 398 S.E.2d 873 (1990), *aff'd*, 330 N.C. 826, 412 S.E.2d 660 (1992) (determining spousal privilege under North Carolina General Statute § 8-57 did apply when the defendant-husband told his wife he planned to kill someone else).

¶ 14 Ultimately,

[w]hile recognizing that the cases and statutes pertinent to this issue have not been models of clarity, our Supreme Court has interpreted section 8–57 to mean that a spouse[] shall be incompetent to testify against one another in a criminal proceeding only if the substance of the testimony concerns a confidential communication between the marriage partners made during the duration of their marriage[.] This interpretation:

> allows marriage partners to speak freely to each other in confidence without fear of being thereafter confronted with the confession in litigation. However, by confining the spousal disqualification to testimony involving confidential communications with the marriage, we prohibit the accused spouse from employing the common law rule solely to inhibit the administration of justice.
>
> To fall within the purview of this privilege, the communication must have been made confidentially between wife and husband during the marriage. Accordingly, the determination of whether a communication is confidential within the meaning of the statute depends on whether the communication was induced by the marital relationship and prompted by the affection, confidence, and loyalty engendered by such relationship. With these rules in mind, we now turn to the facts of the case at bar.

*State v. Hammonds*, 141 N.C. App. 152, 169–70, 541 S.E.2d 166, 179 (2000) (citations and quotation marks omitted), *aff'd per curiam*, 354 N.C. 353, 554 S.E.2d 645 (2001).

¶ 15   As applied here, defendant's statements demanding sex from his wife after having repeatedly stabbed her and while still wielding a knife were not "prompted by *the affection, confidence, and loyalty engendered by such relationship.*" N.C. Gen.

Stat. § 8-57(c) (emphasis added). Further, defendant's statements of suicidal thoughts and concern about arrest for the crime defendant was in the process of committing against his wife cannot be said to spring from "affection, confidence, and loyalty" borne out of marital relations. *Id.* Defendant was not confessing to his wife about a prior crime against someone else or confiding in her about his plans of a future crime but instead speaking about the violent act he was currently committing – assaulting Leah while still wielding a weapon as she begged for water, attempted to escape from defendant, and desperately needed medical attention due to wounds inflicted by defendant – and his concerns about the possible repercussions. Although North Carolina General Statute § 8-57(c) could theoretically apply to a defendant's statements made during the commission of a crime, in this situation, defendant's lack of "affection, confidence, and loyalty" in making these statements could not be clearer. *Id.*

¶ 16    Defendant has also failed to demonstrate prejudice from the admission of these portions of Leah's testimony. Even if we agreed with defendant that his statements were somehow prompted by "affection, confidence, and loyalty" based on the marital relationship, exclusion of these limited portions of Leah's testimony would not affect the outcome of the case. Leah's testimony regarding what defendant *did* to her and the evidence of her injuries was far more important than what defendant *said* while he was stabbing or assaulting her. *Id.*; *see generally State v. Godley*, 140 N.C. App.

15, 26, 535 S.E.2d 566, 574–75 (2000) ("The erroneous admission of evidence requires a new trial only when the error is prejudicial.  To show prejudicial error, a defendant has the burden of showing that there was a reasonable possibility that a different result would have been reached at trial if such error had not occurred."  (citations and quotation marks omitted)).  This argument is overruled.

## III.     Conclusion

For the foregoing reasons, we conclude there was no error.

NO ERROR.

Judges ARROWOOD and HAMPSON  concur.